```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| WILLIE TRAMPAS HOSKINS, | ) |
| | ) |
| Plaintiff, | ) Action No. 6:15-CV-00147-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security | ) |
| | ) |
| Defendant. | ) |

```
              **    **    **    **    **
```

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 10, 11) on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

## II.

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning January 15, 2013 (Tr. 212, 219), when he was forty-three years old. He has the equivalent of a high school education (GED) and previous work as an industrial truck operator, production assembler, concrete mixing truck driver, tractor-trailer truck driver, dump truck driver, and construction worker (Tr. 46-47). He alleged in his applications

that he was unable to work due to back, neck, left arm, left leg, and "sometimes" right leg pain (Tr. 264, 281). His applications were denied initially and on reconsideration (Tr. 74-77), and by an Administrative Law Judge after a hearing ("ALJ") (Tr. 11-23, 24-51). The Appeals Council declined Plaintiff's request for review (Tr. 1-4), making the ALJ's August 28, 2014 decision the final agency decision. This appeal followed and the case is ripe for review pursuant to 42 U.S.C. § 405(g).

## III.

In September 2002, Plaintiff had a successful anterior cervical discectomy and fusion at the C5-C6 level (Tr. 574). After some time, he sought treatment for management of pain in the lower back extending into the legs at Interventional Pain Specialists for pain management, beginning in April 2012 through April 2013(Tr. 378-406). Both Michael Fletcher, M.D., and Kendall Hansen, M.D., noted over time that Hoskins had a "smooth and steady" gait (Tr. 378, 381, 383, 385, 388, 390, 392, 395, 397, 399, 401, 403, and 405). One month after his alleged disability onset date, in February 2013, Dr. Fletcher noted Plaintiff's report of increased back pain due to packing, moving, and lifting boxes (Tr. 381).

Since 2002, Plaintiff has also received examinations or treatment by providers at St. Elizabeth Healthcare (Tr. 422-557, 558-573), with an October 2012 physical examination finding Plaintiff to be in no acute distress, with normal range of motion

3

of his neck without tenderness, and with his extremities having intact distal pulses, with no tenderness or edema. Plaintiff was also described as fully oriented, moved his extremities equally, and no focal deficits were noted (Tr. 445) during that examination.

In May 2013, Robert Hoskins, M.D., saw Plaintiff for a consultative physical examination (Tr. 362-366). Plaintiff reported his chief complaint was "back pain" (Tr. 362). The relevant physical examination findings from Dr. Hoskins report that Plaintiff exhibited no edema of his extremities. Dr. Hoskins observed a surgical incision being noted over the right anterior neck; otherwise, no crepitation, tenderness, effusions, instability, atrophy, and no abnormal strength/tone in the head, neck, spine or extremities was observed. Plaintiff demonstrated a normal gait and no sensory deficits were identified. Plaintiff could sit/squat and stand from a chair with no perceived discomfort. Plaintiff was able to transfer to and from the exam table without remarkable difficulty. Dr. Hoskins noted that Plaintiff reported smoking one pack of cigarettes per day. Despite noting that physical examination was "benign without deformities," Dr. Hoskins opined that he expected Plaintiff would have significant limitations for lifting, carrying, standing, and sitting. However, Dr. Hoskins opined that he was not certain Plaintiff was completely excluded from some limited light lifting, carrying, handling, etc., and that he could be malingering. Dr.

4

Hoskins did not set forth specific functional limitations (Tr. 362-366).

Subsequently, Plaintiff received routine conservative treatment from Roy Varghese, M.D., for back and neck pain, consisting primarily of prescription medication refills. Dr. Varghese's physical examinations of Plaintiff between October 2013 and April 2014 resulted in generally normal and minimal findings with refills of prescription medications (Tr. 416-421). In March 2014, Dr. Varghese provided somewhat illegible checklist residual functional capacity questionnaire responses that contained restrictive functional limitations without much in the way of reporting supportive objective findings (Tr. 407-411).

State agency medical consultant Donna Sadler, M.D., reviewed the record in July 2013 and opined that Plaintiff had abilities consistent with light exertion work (Tr. 85-87). Dr. Sadler's assessment included Plaintiff retaining the ability to occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand, walk, and sit about six hours, respectively, in an eight hour workday; no limitation in balancing; frequent climbing of ramps and stairs; frequent stooping, kneeling and crouching; no climbing ladders, ropes, and scaffolds or crawling; frequent pushing and pulling; occasional overhead reaching bilaterally but no limitations in handling or fingering; and environmental limitations as to avoiding concentrated exposure to

extreme cold or heat and vibration; and all exposure to hazards (Tr. 85-87).

State agency psychologists Nancy Hinkeldey, Ph.D., and Ed Ross, Ph.D., reviewed the record in May 2013, and July 2013, respectively (Tr. 56, 67, 83-84, 96-97). In May 2013, Dr. Hinkeldey opined that Plaintiff was not subject to a medically determinable mental impairment (Tr. 56, 67). In July 2013, Dr. Ross also opined that Plaintiff was not subject to a medically determinable mental impairment (Tr. 83-84, 96-97).

Plaintiff testified at the hearing convened in this matter before the ALJ that the primary reason he was unable to work was due to neck and back pain as well as numbness in his upper extremities (Tr. 35-38). Plaintiff testified that he had a GED and had attended one semester of college (Tr. 35). He advised the ALJ that he last worked as a trash truck driver in November or December of 2011 or 2012 (Tr. 30-31) and testified that he can no longer drive long distances (Tr. 41-42). He testified, as well, that he spends his days watching television (Tr. 41) and cuts the grass, but it takes all day (Tr. 41). He estimated that he could only lift about five pounds (Tr. 39), could stand for no more than 10-15 minutes at a time and sit for 15-20 minutes at a time, and

testified that, if he sat for very long periods, his left leg goes numb (Tr. 39-40, 42).[2]

A vocational expert, Jo Ann Bullard, testified at the August 2014 administrative hearing (Tr. 44-50) that Plaintiff's past work ranged from light to heavy exertion and unskilled to semi-skilled with the position of production assembler being unskilled light exertion (Tr. 46-47). The ALJ asked the vocational expert to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of the Plaintiff (Tr. 47-48). The vocational expert testified that such an individual could perform Plaintiff's past relevant work as a production assembler, and could also perform the representative unskilled light exertion jobs of laundry folder, textile checker and retail marker (Tr. 48-49). In response to further questioning from the ALJ, the vocational expert testified that certain further limitations would preclude employment (Tr. 49-50).

Having considered the record, including the testimony offered at the hearing in this matter, the ALJ found that Plaintiff had severe impairments in the form of degenerative disc disease of the lumbar and cervical spines and status post cervical fusion (Tr.

---

[2] Plaintiff also testified that he was, at that time, incarcerated after pleading guilty to conspiracy to manufacture methamphetamine (Tr. 43). The Court notes that "Willie Trampus Hoskins" was convicted in 6:13-cr-49-GFVT (E.D.Ky.).

13; Finding No. 3). The ALJ found that Plaintiff's impairments, singly or in combination, did not meet or equal the severity of a listed impairment (Tr. 14; Finding No. 4). As discussed below, the ALJ also found that Plaintiff's complaints of disabling limitations were not entirely credible (Tr. 15). The ALJ found that Plaintiff had the residual functional capacity to do light exertion work with additional postural, manipulative and environmental limitations (Tr. 14; Finding No. 5) and that, based on the testimony of the VE, Plaintiff could perform his past work as a production assembler as well as the representative light exertion positions of laundry folder; textile checker; and marker retail, existing in significant numbers in the national economy (Tr. 17-19; Finding No. 6). Thus, the ALJ found that Plaintiff was not under a disability from his alleged disability onset date of January 15, 2013 through August 28, 2014, the date of the Commissioner's final decision (Tr. 19; Finding No. 7).

**IV.**

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations

omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept." *Foster*, 279 F.3d at 353.

**V.**

Plaintiff generally argues that the ALJ's decision was not supported by substantial evidence, but he specifically contends in this appeal that the ALJ did not properly assess his subjective complaints of pain and that the ALJ erred in discounting the opinions of treating or examining physicians in developing her residual functional capacity determination (Plaintiff's Brief (Pl.'s Br.) at 3, 10).[3] The Court disagrees. As explained below, the ALJ reasonably considered the record as a whole, including the objective medical evidence and Plaintiff's subjective complaints in determining Plaintiff's residual functional capacity and in concluding that Plaintiff could perform his past work as a production assembler as well as other light exertion positions.

The existence impairments such as those alleged by Plaintiff is insufficient to establish disability under the standards of the Act. Plaintiff must show that his impairments caused functional

---

[3] Plaintiff also makes general assertions that the ALJ erred in not determining that he was subject to a non-severe mental impairment or a seizure disorder and that, combined, the severity of his impairments met or equaled that of a listed impairment (Pl.'s Br. at 3, 5-6). However, Plaintiff provides no developed argumentation beyond the general assertions alluded to above and, thus, should be waived. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation omitted)).

9

limitations so severe that he was unable to engage in any substantial gainful activity for a continuous period of at least 12 months. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (citing 42 U.S.C. § 423(d)(1)(A)). The disability, not just the impairment, must last 12 months. *Walton*, 535 U.S. at 220. Here, the Court agrees with the Commissioner, that the evidence simply does not support Plaintiff's claims of completely disabling limitations through the date of the ALJ's decision. *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.").

The Court first considers whether the ALJ's residual functional capacity finding was reasonable, based on the evidence of record, and, thus, represented "the most [a claimant] can still do despite [his] impairments." 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1) & (5). An ALJ is required to assess a claimant's residual functional capacity based on all of the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1545(a)(3) No medical source opinion is conclusive by itself on this issue. *See* SSR 96-5p, 1996 WL 374183, at *2, 4-5. Similarly, a claimant's

10

subjective complaints of pain or other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a). The claimant retains the burden of establishing his residual functional capacity limitations. *See Jordon v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008) (citation omitted) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . The claimant, however, retains the burden of proving his lack of residual functional capacity."); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999).

In the matter at hand, the ALJ considered the entire record (Tr. 13, 14; Finding No. 5), including medical source opinions and Plaintiff's subjective complaints in the making of her residual functional capacity determination (Tr. 15-17), her determination that Plaintiff retained the capacity to perform his past work as a production assembler as well as the other representative light exertion positions (Tr. 17-19; Finding No. 6) despite his impairments, and her ultimate decision that Plaintiff was not disabled under the Act (Tr. 19; Finding No. 7). The ALJ discussed the relevant medical evidence in making this residual functional capacity determination, including the findings or opinions of Plaintiff's treating physicians, Drs. Varghese and Fletcher; the findings and opinion of consultative examining physician, Dr.

Hoskins; and the opinions of the state agency medical consultants, Drs. Sadler, Hinkeldey, and Ross (Tr. 15-17).

With regard to Plaintiff's complaints of back and neck pain, the ALJ concluded and Plaintiff does not dispute that his treatment during the relevant time period was routine and conservative (Tr. 15-16). The findings were generally normal, with a few exceptions, and treatment largely consisted of refilling prescriptions for medication (Tr. 16, 416-21). In light of this history, the Court is not persuaded that the ALJ erred to the extent that she discounted Dr. Varghese's recommendations regarding Plaintiff's residual functional capacity. The ALJ considered the somewhat illegible checklist form residual functional capacity questionnaire responses prepared by Dr. Varghese in March 2014 (Tr. 407-411) but reasonably concluded that the recommendation was entitled to less weight than it might otherwise be because it contained overly restrictive limitations without supporting objective findings. An ALJ may discount a doctor's opinion when the doctor's findings are not supported by objective medical evidence or are inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c); *see also Walters v. Comm'r Soc. Sec*, 127 F.3d 525, 529–530 (6th Cir.1997); *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where claimant's subjective complaints unsupported by objective findings).

12

With that in mind, the Court also observes that the ALJ's residual functional capacity finding is largely in keeping with the results of Dr. Hoskins's May 2013 consultative examination, although not with any significant limitations proposed. There, despite an unremarkable physical examination, Dr. Hoskins opined that he expected Plaintiff would have significant limitations for lifting, carrying, standing, and sitting based on his complaints but was not certain Plaintiff was completely excluded from some limited light lifting, carrying, handling, etc., and that Plaintiff "could be malingering" (Tr. 364). The ALJ justifiably assigned only "minimal" weight to Dr. Hoskins's opinion, reasonably pointing out that his physical examination of Plaintiff "was benign without deformities." In other words, the ALJ properly considered whether the opinion offered by Dr. Hoskins was in keeping with the objective results of his examination. Further, the ALJ pointed out that the probative value of Dr. Hoskins's opinion was diminished because of the lack of specific function-by-function limitations (Tr. 16-17). The Court cannot say that this was error.

Further, the ALJ's residual functional capacity determination is supported by the opinions of the state agency medical consultants, Drs. Sadler, Hinkeldey, and Ross, to which she assigned "substantial" weight (Tr. 17; Tr. 56, 67, 83-84, 85-87, 96-97). State agency medical consultant, Dr. Sadler, opined that

Plaintiff retained the residual functional capacity for light exertion work, with the ability to occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand, walk, and sit about six hours, respectively, in an eight hour workday; no limitation in balancing; frequent climbing of ramps and stairs; frequent stooping, kneeling and crouching; no climbing ladders, ropes, and scaffolds or crawling; frequent pushing and pulling; occasional overhead reaching bilaterally; no limitations in handling or fingering; and no concentrated exposure to extreme cold or heat and vibration; and all exposure to hazards (Tr. 85-87). And state agency medical consultants, Drs. Hinkeldey and Ross, opined that Plaintiff was not subject to a medically determinable mental impairment (Tr. 56, 67, 83-84, 96-97). Again, the ALJ justifiably assigned "substantial" weight to the opinions of the state agency medical consultants, Drs. Sadler, Hinkeldey, and Ross (Tr. 17). As "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i), the decision to give more weight to a state agency doctor over treating and examining doctors is, indeed, permissible under the right circumstances. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

The ALJ was appropriately concerned by the absence of objective clinical or laboratory findings to support the degree of

14

limitations as argued by Plaintiff and suggested by Dr. Varghese and Mr. Hoskins, and was obliged to consider the fact that the objective medical evidence offered support, instead, to the opinions of the agency physicians and, ultimately, her reasonable residual functional capacity assessment (Tr. 14-17). 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies, including conflicts between a claimant's statements and the medical record).

Substantial evidence also supports the ALJ's finding that the record did not include objective findings that support Plaintiff's argument that he was subject to disabling symptoms. Symptoms are subjective complaints about a claimant's condition, and cannot be the basis for a finding of disability without more. *See* 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 532 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."). Here, the ALJ justifiably found Plaintiff's subjective complaints were not entirely credible and set forth a number of significant reasons for her credibility determination including pointing out that in February 2013 (one month after Plaintiff's alleged disability onset date) Plaintiff engaged in packing, lifting and moving boxes (Tr. 15-17). *Walters*,

127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

This Court is not concerned with the fact that the evidence could be weighed differently to support a finding of disability, as Plaintiff urges (Pl.'s Br. at 3-10), because this matter is subject to substantial evidence review. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence."). Regardless of whether the Court would have made the same findings as the ALJ on the evidence in the record, the ALJ's findings must be affirmed because they are supported by substantial evidence. *Id*. The ALJ reasonably weighed all medical opinions and other evidence and considered all relevant medical findings including those provided by treating, examining, and state agency medical consultants (Tr. 14-17), and her decision concerning the Plaintiff's ability to do work in her residual functional capacity finding is supported by substantial evidence. The Court affirms the decision of the Commissioner in this regard.

Further, the Court concludes that the ALJ's determination at step four of the sequential evaluation that Plaintiff retained the residual functional capacity to perform his past work as a production assembler was supported by substantial evidence.

Because the RFC finding by the ALJ was appropriate, the ALJ appropriately relied upon the vocational expert's response to a hypothetical question which reflected that residual functional capacity and she was not required to include additional limitations in her hypothetical question to the vocational expert. *See, e.g., Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("[T]he Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy."). The vocational expert testified that such an individual could perform Plaintiff's past work as a production assembler and provided representative examples of other light exertion positions that such an individual could perform (Tr. 47-49). The vocational expert's response to the ALJ's hypothetical question constitutes substantial evidence in support of the ALJ's finding that Plaintiff retained the residual functional capacity to perform his past work as a production assembler as well as other jobs in the national economy, including the identified representative light exertion positions (Tr. 17-19, Finding No. 6; Tr. 47-49). That is enough, and the Court will affirm the decision of the Commissioner.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 10) is **DENIED** and

2) that Defendant's Motion for Summary Judgment (DE 11) is **GRANTED**.

This the 29th day of September, 2016.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge